Steven C. Mahaffy (Bar No. 022934)
MAHAFFY LAW FIRM PC
PO Box 2902
Gilbert, AZ 85299–2902
Tel.: 480-993-8053
Email: steve@mahaffylaw.com

Donald Wilson, Jr. (005205)
Brian Holohan (009124)
BROENING, OBERG, WOODS
& WILSON, P.C.
2800 N. Central Avenue, Suite 1600
Phoenix, Arizona 85004
602-271-7700
dwj@bowwlaw.com
bh@bowwlaw.com
Attorneys for Plaintiff
Fusion Orthopedics USA, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Fusion Orthopedics USA, LLC,
an Arizona limited liability company,

Plaintiff,

v.

Jeff Golden, an individual; Ortho Max, Inc., a Florida corporation; Carl Bax; Connor Fogleman; Dale Faber; Daniel Choueifati; Delex Fertil; Eric Parkin; Grace Grogan; Jennifer Johnson; John Bozeki; Matthew Zielinski; Max Jonassaint; Nicholas Edmondson; Aubrey Deptula; Thomas Deptula; Tracy Nell; and Jayce Golden,

Defendants.

No.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Fraud; Conversion; Aiding and Abetting; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Defamation and Defamation Per Se; Tortious Interference with Contract and Prospective Business Relations; Misappropriation of Trade Secrets; Federal Trademark Infringement (15 U.S.C. § 1114); Common Law Trademark Infringement; False Association and False Designation of Origin (Lanham Act § 43(a)); and Common Law Unfair Competition

Plaintiff Fusion Orthopedics USA, LLC (“Fusion” or “Plaintiff”) alleges as follows:

1. Plaintiff Fusion Orthopedics USA, LLC is a limited liability company organized under Arizona law, with its principal place of business at 6859 E. Rembrandt Ave, Suite 122, Mesa, Arizona 85212.

2. Plaintiff alleges upon information and belief that Defendant Jeff Golden is a citizen of the State of Florida. At all relevant times, Golden was acting as agent for Defendant Ortho Max, Inc., when committing the torts and breaches alleged herein. Ortho Max, Inc. is vicariously liable for Golden's torts and breaches alleged here in.

3. Defendant Ortho Max, Inc. is a Florida corporation with its principal place of business in Palm City, Florida. Ortho Max was Fusion's authorized distributor in Florida pursuant to the Distributor Agreement, which was terminated for cause on July 31, 2026.

4. Plaintiff alleges based upon information and belief that Defendant Carl Bax is a citizen of the State of Florida. At all relevant times, Defendant Bax acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

5. Plaintiff alleges based upon information and belief that Connor Fogleman is a citizen of, the State of Florida. At all relevant times Defendant Fogleman acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

6. Plaintiff alleges based upon information and belief that Dale Faber is a citizen of the State of Florida. At all relevant times, Defendant Faber acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

7. Plaintiff alleges based upon information and belief that Daniel Choueifati is a citizen of, the State of Florida. At all relevant times, Defendant Choueifati acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

8. Plaintiff alleges based upon information and belief that Delex Fertil is a citizen of the State of Florida. At all relevant times, Defendant Fertil acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

9. Plaintiff alleges based upon information and belief that Eric Parkin is a citizen of the State of Florida. At all relevant times, Defendant Parkin acted as a sale agent and Inventory Manager for Ortho Max, Inc., responsible for the handling, tracking, and deployment of Fusion Products into surgical cases.

/ / /

/ / /

10. Plaintiff alleges based upon information and belief that Grace Grogan is a citizen of the State of Florida. At all relevant times, Defendant Grogan acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

11. Plaintiff alleges based upon information and belief that Jennifer Johnson is a citizen of the State of Florida. At all relevant times, Defendant Johnson acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

12. Plaintiff alleges based upon information and belief that John Bozeki is a citizen of the State of Florida. At all relevant times, Defendant Bozeki acted as a sales agent for for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

13. Plaintiff alleges based upon information and belief that Matthew Zielinski is a citizen of the State of Florida. At all relevant times, Defendant Zielinski acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

14. Plaintiff alleges based upon information and belief that Max Jonassaint is a citizen of the State of Florida. At all relevant times, Defendant Jonassaint acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

15. Plaintiff alleges based upon information and belief that Nicholas Edmondson is a citizen of the State of Florida. At all relevant times, Defendant Edmondson acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

16. Plaintiff alleges based upon information and belief that Aubrey Deptula is a citizen of the State of Florida. At all relevant times, Defendant Aubrey Deptula acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

17. Plaintiff alleges based upon information and belief that Thomas Deptula is a citizen of the State of Florida. At all relevant times, Defendant Thomas Deptula acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products. Plaintiff alleges based upon information and belief that Defendant Thomas Deptula also served as the General Manager of Ortho Max, Inc.

18. Plaintiff alleges based upon information and belief that Tracy Nell is a citizen of the State of Florida. At all relevant times, Defendant Nell acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products.

19. Plaintiff alleges based upon information and belief that Jayce Golden is a citizen of the State of Florida. At all relevant times, Defendant Jayce Golden acted as a sales agent for Ortho Max, Inc. in connection with the sale and distribution of Fusion Products. Defendant Jayce Golden is the son of Defendant Jeff Golden.

20. Defendants Carl Bax, Connor Fogleman, Dale Faber, Daniel Choueifati, Delex Fertil, Eric Parkin, Grace Grogan, Jennifer Johnson, John Bozeki, Matthew Zielinski, Max Jonassaint, Nicholas Edmondson, Aubrey Deptula, Thomas Deptula, Tracy Nell, and Jayce Golden are collectively referred to herein as the "Rep Defendants."

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Fusion Orthopedics USA, LLC is a limited liability company and, for purposes of diversity jurisdiction, is a citizen of each state of which its members are citizens. Each of Fusion's members is itself a limited liability company, and each of those members is a citizen of Arizona. Each member of each of those limited liability companies is a citizen of Arizona. Each member of those limited liability companies that is a trust is a traditional trust, and each trustee of each such trust is a citizen of Arizona. No member of Fusion, and no member of any of Fusion's members, is a citizen of Florida. All Defendants are citizens of Florida. No Defendant is a citizen of Arizona.

22. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because Fusion asserts claims arising under the laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). This Court has supplemental jurisdiction over Fusion's state-law claims pursuant to 28 U.S.C. § 1367(a)

because those claims are so related to the federal claims that they form part of the same case or controversy.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to Fusion's claims occurred in this District, including the negotiation and execution of the Distributor Agreement, harm to Fusion's Arizona-based business operations, and conversion of funds belonging to Fusion in Arizona. The Distributor Agreement further designates Maricopa County, Arizona as exclusive venue for disputes not subject to arbitration.

## FACTUAL ALLEGATIONS

24. This action arises from a coordinated scheme by Jeff Golden, Ortho Max, Inc., and their network of sales representatives, including the Rep Defendants, to convert Fusion's property, destroy Fusion's supplier relationships through defamatory statements, interfere with Fusion's business and prospective business relationships, and misappropriate Fusion's trade secrets, confidential information, and intellectual property — all in deliberate violation of their contractual and common-law obligations to Fusion.

25. Fusion is a manufacturer and distributor of FDA-regulated implantable orthopedic devices, including foot and ankle and upper extremity surgical implants (the "Products"). Fusion sells its Products through independent distributors operating pursuant to formal Distributor Sales Agent Agreements ("Distributor Agreements").

26. Fusion owns or holds the exclusive right to use and to enforce a portfolio of trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Registered Marks"). Fusion is the owner of record of two of those registrations: FUSION ORTHOPEDICS (Reg. No. 7,639,755) and LAPILOCK (Reg. No. 7,148,603).

27. Fusion is the exclusive licensee, with the exclusive right to use and to enforce, of four additional registrations, which are registered to New Standard Device, LLC: METALOGIX (Reg. Nos. 6,018,292 and 6,124,422) and REVOLUTION EXTERNAL PLATING SYSTEM (Reg. Nos. 6,134,175 and 6,304,002). Fusion holds those rights under

a written exclusive license agreement with New Standard Device, LLC (the "NSD License"). Under the NSD License, New Standard Device, LLC granted Fusion the exclusive right to use the METALOGIX and REVOLUTION EXTERNAL PLATING SYSTEM marks in the United States and the exclusive right to enforce them, including the right to bring and maintain, in Fusion's own name, actions for infringement, unfair competition, and false designation of origin, and to recover the damages and profits arising from such infringement. The Registered Marks are used in interstate commerce in connection with Fusion's orthopedic medical devices and related goods and services. Registration of the Registered Marks is prima facie evidence of the validity of the marks, of the registrant's ownership, and of the exclusive right to use the marks in commerce, and Fusion holds the exclusive right to use and to enforce each of the Registered Marks.

28. Fusion also owns common-law trademark rights, arising from its continuous use of the marks in commerce, in the following marks (collectively, the "Common Law Marks"): Sgarlato; PolyLock; PolyLock Ankle; PolyLock Midfoot; PolyLock Small Bone; Bolo Button; Fusion Biologics; FuzeFix; FuzeRight; DynaBridge; FibFix; HammerTech Ti; HammerTech PEEK; HammerTech HT; IntraLock; YOCO; PolyPrep; TalarLift; TalarLift STS; TopLock; UltraFix; UltraFix Wrist; UltraFix Distal Humerus; UltraFix Clavicle; UltraFix Hand; UltraFix Proximal Humerus; UltraFix Radius; Radius Tight Radio; Quick Radius; SynthaGraft; and Scaphoid. The Registered Marks and the Common Law Marks are referred to collectively as the "Fusion Marks." Fusion has developed and owns valuable goodwill in each of the Fusion Marks.

29. Ortho Max, Inc. and Jeff Golden were Fusion's exclusive Florida distributor from December 2023 through July 31, 2026, when Fusion terminated the Distributor Agreement for cause, effective immediately, pursuant to Section 7(b) of the Agreement, on grounds of willful misconduct, dishonesty, and malfeasance.

30. Despite formal termination, Golden and Ortho Max have continued to sell Fusion Products to hospitals and surgery centers, directly bill those facilities in breach of Section 2 of the Agreement, commingle the resulting funds, retain Fusion's inventory

without authorization, and inform Fusion's customers and suppliers that they remain Fusion's authorized representatives.

31. Golden made false and defamatory statements to Fusion's Brazilian supplier, GMreis Implantes Ortopédicos ("GMreis"), by alleging that Fusion engaged in reverse engineering of other person's products and IP misappropriation, causing GMreis to halt production of Fusion's Products causing irreparable harm to Fusion's supply chain, product availability, and customer relationships.

32. Golden also attempted to physically intercept Fusion's Product shipments from Fusion's Miami supplier, contacted prospective distributor Bill Black with threatening communications designed to disrupt that business relationship, and transmitted defamatory and extortionate text messages to Fusion's General Manager, Dan Griffin, referencing federal law enforcement, Fusion's corporate structure, and the financial costs of litigation.

33. The Rep Defendants have participated in or facilitated this scheme by continuing to support unauthorized surgical cases using Fusion's Products after termination, retaining Fusion's inventory, and failing to complete Fusion's mandatory product training, thereby creating an unreasonable risk of patient harm.

34. Fusion seeks compensatory damages, disgorgement of all revenues unlawfully obtained through the unauthorized sale of Fusion Products post-termination, punitive damages for willful and malicious conduct, injunctive relief compelling immediate return of all Fusion property, a declaration of Fusion's exclusive IP ownership, and all other available relief.

**A. The Distributor Agreement and Golden's Obligations**

35. Fusion and Ortho Max are parties to a Distributor Sales Agent Agreement dated December 21, 2023 and fully executed by the parties on May 9–10, 2024 (the "Agreement"). (Exhibit A.) Schedule A expressly includes "all future Fusion Orthopedic products," bringing Fusion's upper extremity product line within the Agreement's scope from inception without any amendment. Fusion's upper extremity line arose in the ordinary

course of this distributor relationship. After Ortho Max's prior upper extremity manufacturer terminated Ortho Max's representation, Ortho Max—as Fusion's distributor—identified for Fusion the upper extremity products its customers needed and the products most worth developing and most frequently utilized, and Fusion, which was itself expanding into the upper extremity market, developed and at all times owned that product line. At all times Ortho Max acted as Fusion's distributor and sales agent, and not as a partner, member of a joint venture, or co-owner of Fusion, its Products, or any Fusion product line. Title to all Fusion Products and all intellectual property embodied in them remained exclusively with Fusion. Section 2 requires all Fusion Products be billed directly by Fusion and prohibits commingling of customer funds. Section 1(i) provides that Ortho Max holds all Fusion inventory as bailee for Fusion, with title remaining in Fusion at all times. Section 4 governs confidentiality and assigns all IP developed in connection with Fusion's Products to Fusion. Section 7(b) authorizes immediate termination without notice for willful misconduct, dishonesty, or malfeasance. Section 8 provides that Ortho Max expressly waived any defense that an adequate remedy at law exists and acknowledged that breach causes irreparable harm.

**B. Golden's Written Admission**

36. On January 13, 2026, Golden wrote directly to Fusion stating: "I believe that our original agreement covers the change of control payments. What needs to be addressed is the rest of the US that we will be playing an internal part in making successful. That was where the 2.5% override came from." This admission establishes that the original Agreement governed the upper extremity product line from inception and that no amendment was required. Golden is estopped from asserting any contrary position in this litigation.

/ / /

**C. Defamatory Statements to Fusion's Supplier**

37. In early 2026, Golden, acting in his capacity as principal and authorized agent of Ortho Max, Inc. and within the course and scope of his authority as its controlling

officer, contacted GMreis Implantes Ortopédicos, Fusion's Brazilian supplier, and made false statements alleging that Fusion was engaged in reverse engineering GMreis's product designs and misappropriating GMreis's intellectual property for the purpose of filing its own FDA 510(k) submission based on GMreis's proprietary technology. These statements were made in the course of Golden's management of Ortho Max's distribution activities and supplier relationships on behalf of Ortho Max. The statements were false, made with knowledge of their falsity or reckless disregard for their truth, and designed to sever Fusion's supplier relationship so that Golden and Ortho Max could step into it directly. As a direct result, GMreis halted production of Products ordered and paid for by Fusion, causing Fusion significant and ongoing financial harm. Ortho Max is vicariously liable for Golden's defamatory statements under the doctrine of respondeat superior because Golden made the statements as Ortho Max's principal officer acting within the scope of his authority.

38. Upon information and belief, Ortho Max and Jeff Golden have illegally imported and smuggled GMreis products into the United States for sale, outside of Fusion's authorized supply channel and in circumvention of applicable United States customs and import laws, in order to divert to themselves sales and revenues belonging to Fusion. This allegation is made on information and belief based on, among other things, Defendants' post-termination possession and sale of GMreis-manufactured upper extremity product that Fusion did not supply to them, and Golden's direct dealings and communications with GMreis outside of Fusion's authorized supply channel. Fusion is a specification developer of its Products, is registered with the U.S. Food and Drug Administration, and maintains a quality management system for medical devices, and Fusion is authorized to import its Products into the United States. Plaintiff alleges upon information and belief that neither Ortho Max nor Golden is registered with the U.S. Food and Drug Administration as a medical device manufacturer, specification developer, or importer, and neither maintains a quality management system that complies with FDA regulations. Any GMreis-manufactured product that Ortho Max or Golden has imported, held, or sold outside

Fusion's authorized channel is therefore outside Fusion's quality system and regulatory approvals and has been imported and distributed in circumvention of applicable United States customs, import, and FDA requirements.

**D. Attempted Interception of Fusion's Shipments**

39. In or about early June 2026, Golden and/or Ortho Max attempted to intercept Fusion's upper extremity Product shipments from Fusion's Miami supplier without authority to accept, redirect, or take possession of any Fusion Product shipment.

**E. Refusal to Return Inventory; Post-Termination Sales and Direct Billing**

40. On May 13, 2026, Fusion issued a formal written notice to Golden confirming that Schedule A had been amended to include the upper extremity product line and setting amended sales goals.

41. On June 15, 2026, Ortho Max responded, disputing the amendment and asserting that the upper extremity line belonged to Ortho Max.

42. On June 16, 2026, Fusion, through counsel, responded to Ortho Max's June 15 letter, disputing its positions and expressly reserving Fusion's rights and remedies.

43. On July 31, 2026, following Golden's continued and escalating conduct, Fusion issued a Notice of Immediate Termination and Demand to Cease and Desist.

44. By individual notices dated August 10, 2026, and transmitted by email on or about August 20, 2026, Fusion demanded that each of the Rep Defendants return all Fusion inventory and property within three days and placed each on notice of individual civil liability. Fusion further demanded return of its inventory directly, providing return shipping labels on August 11, 2026, and, on September 18, 2026, a written demand identifying 26,593 unreturned Fusion inventory items across 2,157 catalogued part numbers.

45. Notwithstanding these repeated notices and demands, Ortho Max refused to return Fusion's inventory and, through Inventory Manager Eric Parkin, admitted in writing on or about August 12, 2026, that it was continuing to bill HCA St. Lucie Medical Center for Fusion Products after termination, while offering only a conditional and partial

inventory release at The Surgery Center at Jensen Beach with no accounting of inventory at other facilities.

46. Ortho Max's continued billing of Fusion's customers, collection of Fusion's revenues, and commingling of those funds constitutes a material breach of Section 2 of the Agreement, conversion of Fusion's property, and fraud upon Fusion and its customers.

**F. Tortious Interference with Prospective Distributor Bill Black**

47. In or about June 2026, while Fusion was onboarding Bill Black as a prospective new Florida distributor to replace Ortho Max, Golden directly and without authorization contacted Black and stated: "Do you have a lawyer that you would like my lawyer to talk to? Probably a good idea to make sure you understand the entire situation." This communication was not a legitimate exercise of any legal right; it was a deliberate attempt to weaponize the pendency of this dispute to frighten a prospective business partner away from Fusion and thereby extend Golden's stranglehold over Fusion's Florida distribution. The contact with Black was part of Golden's broader scheme to ensure that, having lost his own distribution rights through termination-for-cause, no successor distributor would step in to serve Fusion's Florida customers without fear of being drawn into Golden's campaign against Fusion.

**G. Golden's Defamatory and Extortionate Texts to Dan Griffin**

48. On or about June 23, 2026, and continuing through on or about July 28, 2026, Golden transmitted a series of text messages to Fusion's General Manager Dan Griffin. Those messages referenced Maricopa County Superior Court filings from an internal Fusion membership dispute and "28 shell companies," and included financially threatening and disparaging statements, including: "Only hope is courts take over. I would be worried about your $$ vs lower numbers"; "Nate...he is fucked"; "Upper a distraction so you don't see the real issues. My guess is Adam not around much."; and "I have had the feds raid my office before. Bad day." These communications constitute defamation per se and intentional intimidation designed to coerce Fusion into abandoning its legal rights, and support Fusion's claims for defamation and racketeering alleged herein.

**H. Training Non-Compliance and Patient Safety Risk**

49. Fusion's mandatory product training is required for all distributors and representatives as a condition of authorization to support surgical cases involving Fusion's FDA-regulated implantable devices. After the effective date of termination, and in the course of a recent audit of Ortho Max's training compliance—undertaken in light of the inventory, billing, and contract issues and the other wrongful and unlawful conduct by Ortho Max, its principal Jeff Golden, and the individual Rep Defendants described herein—Fusion's training platform records revealed that the average completion rate across Ortho Max personnel with assigned training is approximately 62%, with multiple individuals at or near 0% completion, including Eric Parkin, Ortho Max's Inventory Manager, at 0%. Notwithstanding the termination of their authorization and these training deficiencies, Ortho Max and the Rep Defendants have continued, after the effective date of termination, to deploy such personnel into surgical cases involving Fusion's FDA-regulated Class II and Class III implantable devices. Because these individuals are no longer authorized by Fusion and have not completed Fusion's mandatory training, their continued, unauthorized, post-termination support of surgical cases—outside Fusion's authorization, training, and oversight—creates an immediate and unreasonable risk of patient harm.

**I. The Rep Defendants' Individual Participation**

50. Each Rep Defendant has continued to support surgical cases using Fusion's Products after the effective date of termination, without authorization and in knowing disregard of Fusion's written demand that all such activity cease immediately. Each Rep Defendant has retained Fusion inventory, instruments, trays, and/or marketing materials beyond the return deadline set forth in Fusion's demand letters, in violation of Fusion's property rights.

/ / /

51. Following Fusion's termination of Ortho Max, Fusion sent each Rep Defendant an individual written notice, dated August 10, 2026, and transmitted by email

on or about August 20, 2026, stating that the Rep Defendant was not authorized to sell, deploy, bill for, or otherwise handle Fusion Products; demanding the immediate return of all Fusion inventory, instruments, trays, and materials in the Rep Defendant's possession; and identifying the specific unauthorized conduct in which that Rep Defendant had engaged. Notwithstanding this individualized written notice, each Rep Defendant knowingly continued the unauthorized conduct described herein.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF — BREACH OF CONTRACT (Against Ortho Max)

52. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

53. The Distributor Sales Agent Agreement dated December 21, 2023, as executed May 9–10, 2024 (the "Agreement"), is a valid, binding, and enforceable written contract. The Agreement was supported by adequate consideration: Fusion granted Ortho Max the exclusive right to sell and distribute Fusion Products in the State of Florida and paid commissions on resulting sales; Ortho Max agreed to serve as Fusion's authorized sales agent and to comply with the Agreement's terms governing billing, inventory, confidentiality, training, and termination. Both parties executed the Agreement and performed under it for over a year.

54. Fusion fully performed all of its material obligations under the Agreement throughout the term, including providing Fusion Products for distribution, paying agreed commissions, extending distribution rights to the Florida territory, and supporting Ortho Max's sales activities.

55. Ortho Max materially breached the Agreement on multiple independent grounds. First, Section 2 expressly requires that all Fusion Products be billed directly by Fusion and prohibits Ortho Max from billing any hospital, surgery center, or other customer on any Fusion purchase order. Ortho Max nonetheless directly billed hospitals and surgery centers — including HCA St. Lucie Medical Center — for Fusion Products, collected those

payments, commingled the funds with Ortho Max's operating accounts, and then submitted purchase orders to Fusion for the same products.

56. Second, Section 1(i) provides that Ortho Max holds all Fusion inventory as bailee for Fusion, with full title remaining in Fusion at all times. Despite the termination of the Agreement effective July 31, 2026, and Fusion's repeated written demands for the return of its inventory (including the August 11 and September 18, 2026 return demands), Ortho Max refused to return Fusion's inventory.

57. Third, Section 4 requires Ortho Max to maintain the confidentiality of all Fusion proprietary information and assigns to Fusion all intellectual property developed in connection with Fusion's Products. Ortho Max disclosed and weaponized Fusion's confidential supplier and customer information in violation of Section 4 to damage Fusion's relationships with GMreis and its customers.

58. Fourth, the Agreement requires in Section 6 (Training) completion of Fusion's mandatory product training as a condition of authorization to support surgical cases. As revealed by Fusion's recent audit of Ortho Max's training compliance, Ortho Max deployed and continued to deploy personnel, including Inventory Manager Eric Parkin, with zero or near-zero training completion rates into active surgical cases involving Fusion's implantable devices—an additional and independent breach of the Agreement.

59. Fifth, following valid termination for cause on July 31, 2026, Ortho Max continued to sell Fusion Products, bill Fusion's customers, and hold themselves out as Fusion's authorized agents, in direct violation of their post-termination obligations.

60. As a direct and proximate result of these breaches, Fusion has suffered damages including lost revenues from unauthorized sales, the value of converted inventory, wrongfully collected customer payments, lost customer and supplier relationships, and costs incurred in addressing Ortho Max's conduct, in an amount to be proven at trial.

/ / /

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Against Ortho Max)**

61. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

62. The Agreement contains an implied covenant of good faith and fair dealing, which required Ortho Max to act consistently with Fusion's justified expectations and prohibited them from exercising contractual discretion in ways inconsistent with Fusion's reasonable expectations or that would deprive Fusion of the benefits of the bargain. Ortho Max violated this covenant in multiple respects that were not expressly governed by the Agreement's terms but nonetheless bore adversely on Fusion's reasonable expected benefits. While ostensibly performing as Fusion's authorized distributor, Ortho Max: made false and defamatory statements to Fusion's primary supplier GMreis, causing that supplier to halt production and thereby depriving Fusion of its ability to fulfill customer orders — the very purpose of the distribution relationship; attempted to physically intercept Fusion's product shipments from its Miami supplier to divert them for Ortho Max's own use; used Fusion's confidential pricing, customer, and supplier information to conduct unauthorized sales and to facilitate Golden's effort to assume Fusion's supplier relationship; and interfered with Fusion's effort to onboard a successor distributor, Bill Black, by directly contacting and intimidating Black. None of these acts were expressly authorized or permitted by the Agreement; each was an exercise of discretion directly contrary to what Fusion reasonably expected from an authorized distributor acting in good faith.

63. As a direct and proximate result of this breach, Fusion has suffered damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**CONVERSION (Against All Defendants)**

64. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

65. Fusion has at all relevant times had the right to immediate possession of all Fusion Products, inventory, instruments, trays, implants, marketing materials, customer lists, and proprietary materials in the possession of any Defendant. Section 1(i) of the Agreement expressly provides that Ortho Max holds all such inventory as bailee for Fusion, with full legal title remaining in Fusion at all times.

66. No Defendant has or ever had any right, title, or interest in Fusion's property.

67. Defendants have intentionally exercised dominion and control over Fusion's property inconsistent with Fusion's rights by: retaining Fusion's inventory following the termination of the Agreement effective July 31, 2026 and Fusion's repeated written return demands, including the August 11 and September 18, 2026 demands; using Fusion's inventory to support unauthorized post-termination surgical cases and collecting the resulting revenues that belong to Fusion; commingling Fusion's customer payments with Ortho Max's own operating funds; conditioning the return of inventory at The Surgery Center at Jensen Beach on a liability release — attempting to use Fusion's own property as leverage to extract a legal concession; and, in the case of each Rep Defendant, continuing to possess and deploy Fusion instruments and trays at surgical facilities after the effective date of termination and after receipt of Fusion's written demand that all Fusion property be returned immediately.

68. As a direct and proximate result, Fusion has suffered damages including the fair market value of all converted inventory and property, all revenues collected from Fusion's customers that belong to Fusion, and all losses caused by the unavailability of Fusion's inventory for legitimate sales, in an amount to be proven at trial.

69. Defendants' conversion was willful and malicious, entitling Fusion to punitive damages.

**FOURTH CLAIM FOR RELIEF**

**DEFAMATION AND DEFAMATION PER SE (Against Golden and Ortho Max)**

70. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

71. Golden published false statements of fact to representatives of GMreis Implantes Ortopédicos, Fusion's Brazilian supplier, specifically alleging that Fusion was engaged in reverse engineering GMreis's product designs and misappropriating GMreis's intellectual property for the purpose of filing its own FDA 510(k) submission based on GMreis's proprietary technology.

72. Golden made these statements in his capacity as principal and controlling officer of Ortho Max, Inc., acting within the course and scope of his authority on Ortho Max's behalf in connection with Ortho Max's distribution and supplier activities. Ortho Max is therefore liable for these statements under the doctrine of respondeat superior, and Golden is individually and personally liable for the statements he made.

73. The statements were statements of fact, not opinion, and were defamatory per se because they accused Fusion of intellectual property theft and fraud — conduct incompatible with the operation of a legitimate medical device company.

74. The statements were false: Fusion did not engage in reverse engineering or misappropriation of any GMreis intellectual property.

75. Golden knew these statements were false at the time he made them or made them with reckless disregard for their truth or falsity; they were made with the specific intent to cause GMreis to halt production for Fusion so that Golden and Ortho Max could assume the GMreis supplier relationship directly.

76. Golden and Ortho Max had no legal justification or privilege for these statements.

77. As a direct and proximate result, GMreis halted production of Fusion's Products, causing Fusion to lose the benefit of paid orders, suffer lost sales to existing and prospective customers, incur costs in addressing the supply disruption, and sustain damage to its business reputation in the orthopedic device market.

78. Additionally, Golden's June 23 through July 28, 2026, text messages to Dan Griffin contained statements concerning Fusion's management, CEO, and corporate structure that constitute defamation per se as they imputed criminal conduct and

incompetence in connection with Fusion's business; Ortho Max is vicariously liable for those statements as well, as they were made by Golden in furtherance of Ortho Max's interests in this dispute.

79. Because these statements impute to Fusion the commission of a crime and conduct incompatible with the proper conduct of its lawful business, trade, and profession, they are defamatory per se and are actionable without proof of special damages, and Fusion's general damages are presumed.

80. Golden was at all times acting as Ortho Max's agent and/or in the course and scope of his authority on Ortho Max's behalf.

80. Fusion is entitled to compensatory damages for its economic losses and reputational harm and, because the foregoing statements are defamatory per se, to general and presumed damages without proof of special damages. Fusion is further entitled to punitive damages given the deliberate and malicious nature of Golden's defamatory conduct.

**FIFTH CLAIM FOR RELIEF**

**TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS (Against All Defendants)**

81. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

82. Fusion had valid and subsisting contractual relationships with GMreis, pursuant to product supply agreements for the manufacture and delivery of upper extremity surgical implants; with hospitals and surgery centers including HCA St. Lucie Medical Center and The Surgery Center at Jensen Beach, pursuant to purchase orders and facility supply agreements for Fusion Products; and with other customers and suppliers. All Defendants were aware of these relationships by virtue of Ortho Max's role as Fusion's authorized distributor with direct visibility into Fusion's customer and supplier base.

83. Defendants intentionally and improperly interfered with these relationships through conduct that was independently tortious: Golden made false and defamatory

statements to GMreis causing GMreis to halt performance under its supply arrangement with Fusion; after termination, Defendants continued to hold out as Fusion's authorized agents to Fusion's hospital and surgery center customers, disrupting those relationships; and Defendants deployed untrained personnel to support cases at Fusion's customer facilities without authorization, creating patient safety risk and reputational harm that directly damaged those customer relationships.

84. Golden also independently interfered with Fusion's prospective business relationship with Bill Black, a Florida distributor in active discussions with Fusion regarding a distributorship arrangement to succeed Ortho Max in the Florida territory. Golden had actual knowledge of this prospective relationship and, without any legitimate purpose or legal justification, directly contacted Black with the statement: "Do you have a lawyer that you would like my lawyer to talk to? Probably a good idea to make sure you understand the entire situation." This communication was designed to intimidate Black by implying that any association with Fusion would expose him to legal risk, and to thereby chill Black's willingness to enter into a distribution relationship with Fusion.

85. The communication constitutes improper means of interference — it was independently tortious as an act of intimidation designed to weaponize the pendency of this dispute against Fusion's prospective business partner. Golden's deliberate targeting of a prospective Fusion distributor demonstrates that his campaign was not merely a contractual dispute but a coordinated effort to eliminate Fusion's ability to serve its Florida customer base entirely, causing Fusion to suffer disruption to its distribution rebuilding efforts and damages in an amount to be proven at trial.

86. As a direct and proximate result of Defendants' tortious interference with both existing contracts and prospective business relations, Fusion has suffered damages including loss of GMreis's production, lost sales to existing and prospective customers, loss of the Bill Black distributorship opportunity, and damage to its customer relationships, in an amount to be proven at trial.

/ / /

**SIX CLAIM FOR RELIEF**

**FRAUD (Against Golden and Ortho Max)**

87. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

88. Pursuant to Federal Rule of Civil Procedure 9(b), Fusion pleads the following fraudulent misrepresentations with particularity. Beginning in 2025 and continuing through the date of this Complaint, Golden and Ortho Max represented to Fusion's hospital and surgery center customers — including HCA St. Lucie Medical Center and The Surgery Center at Jensen Beach — that Ortho Max was authorized to bill those facilities directly for Fusion Products on Fusion purchase orders. This representation was false: Section 2 of the Agreement expressly prohibited Ortho Max from billing any Fusion customer. Golden and Ortho Max knew this representation was false because they were parties to the Agreement and had actual knowledge of the billing prohibition. These representations were material because the facilities would not have paid Ortho Max had they known Ortho Max was not authorized to collect those funds. The representations were made with the intent that the facilities would rely on them and pay Ortho Max directly rather than Fusion. The facilities were ignorant of the billing prohibition and justifiably relied on Ortho Max's representations of authority, making payments to Ortho Max that should have been made to Fusion. Fusion did not receive those payments and suffered direct financial loss as a result.

89. After directly billing Fusion's customers and collecting payment, Golden and Ortho Max submitted purchase orders to Fusion for the same products, representing to Fusion that these were legitimate orders requiring fulfillment. These representations were false in that they concealed that Golden and Ortho Max had already collected payment from Fusion's customers for the same products. These representations were made by Golden and Ortho Max in the ordinary course of the distribution relationship, at times during which Golden and Ortho Max submitted written purchase orders to Fusion, with knowledge that Fusion would rely on them to process the orders and ship product. Fusion

justifiably relied on these representations and was damaged by the resulting double-billing scheme.

90. As Fusion's authorized distributor and sales agent, Ortho Max and Golden owed Fusion a duty to deal honestly with Fusion and to disclose material facts concerning their handling of Fusion's Products, customers, and funds. Golden and Ortho Max breached that duty by affirmatively concealing from Fusion that they were billing Fusion's customers directly and collecting and retaining funds belonging to Fusion, while continuing to submit purchase orders to Fusion for the same Products. Ignorant of the concealed direct billing and justifiably relying on Ortho Max's apparent compliance with the Agreement, Fusion continued to perform and to ship Products and was thereby damaged. This first-party reliance by Fusion is independent of, and in addition to, the reliance of Fusion's customers alleged above.

91. After the effective date of termination on July 31, 2026, Golden, Ortho Max, and their representatives continued to represent to hospitals, surgery centers, and surgeons that they remained Fusion's authorized distributors and agents. These representations were false as of July 31, 2026, when Ortho Max's authority was formally revoked. The representations were material because they caused Fusion's customers to continue directing business to Ortho Max rather than Fusion and created patient safety risk by allowing untrained personnel to continue supporting surgical cases in Fusion's name. Golden and Ortho Max made these representations with knowledge of their falsity and intent to induce continued reliance by Fusion's customers and by Fusion itself. Fusion suffered direct financial harm and reputational damage as a result.

92. The fraudulent misrepresentations to GMreis — that Fusion was engaged in reverse engineering and IP misappropriation — are described with particularity in the Fourth Claim for Relief and are incorporated herein. Fusion has suffered damages as a direct and proximate result of all of the foregoing fraudulent misrepresentations. The fraudulent conduct was willful, deliberate, and part of a coordinated scheme, entitling Fusion to punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**MISAPPROPRIATION OF TRADE SECRETS (Against All Defendants)**

93. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

94. The following categories of Fusion information constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and Arizona law, because they derive independent economic value from not being generally known or readily ascertainable by competitors who could profit from their disclosure: (a) Fusion's customer lists identifying hospitals, surgery centers, surgeons, and purchasing contacts, together with usage volumes, purchase history, and pricing terms for each; (b) Fusion's supplier arrangements, including the confidential contract terms, pricing, lead times, and production specifications governing Fusion's supply arrangements, including those with GMreis Implantes Ortopédicos and Fusion's Miami supplier; (c) Fusion's territory pricing structures, cost data, and margin information; and (d) Fusion's product specifications, training materials, and surgical technique guides. Fusion maintained the secrecy of this information through confidentiality obligations in Section 4 of the Agreement, restriction of access to authorized personnel, and access-controlled systems. Fusion's trade secrets are related to Fusion Products sold in interstate commerce, satisfying the DTSA's commerce requirement.

95. Defendants misappropriated Fusion's trade secrets in breach of their duty to maintain secrecy and through improper means. Golden used Fusion's confidential supplier information — including GMreis's confidential contract terms, pricing, and production details — to contact GMreis directly and damage Fusion's supplier relationship, and to position himself to assume that relationship; this use of supplier trade secrets was unauthorized and in direct violation of the confidentiality obligations imposed by Section 4 of the Agreement. Golden and Ortho Max used Fusion's customer lists and pricing information to conduct unauthorized post-termination sales to Fusion's customers at Fusion's expense, enabling them to capture revenues that Fusion would otherwise have

received. Each Rep Defendant, having been given access to Fusion's product information, training materials, and customer relationships in the course of their authorized roles, continued to exploit that information to support unauthorized cases and maintain unauthorized customer contact after termination. Defendants acquired Fusion's trade secrets solely by virtue of the confidential relationship created by the Agreement and the confidentiality obligations of Section 4, and were permitted to use that information only for the authorized purpose of distributing Fusion's Products during the term. Their use of that information after termination, to compete with Fusion and to divert its customers and supplier relationships, exceeded the scope of any authorization and constitutes misappropriation by use within the meaning of the DTSA and Arizona law.

96. Fusion is entitled to injunctive relief to prevent continued misappropriation, damages for actual loss and unjust enrichment, exemplary damages for willful and malicious misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(C), and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**EIGHTHCLAIM FOR RELIEF — FEDERAL TRADEMARK INFRINGEMENT**

**(Against All Defendants)**

97. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

98. Fusion owns or is the exclusive licensee with the exclusive right to use and to enforce, the Registered Marks identified above. The Registered Marks are valid, subsisting, and federally registered on the Principal Register of the United States Patent and Trademark Office, and their registration is prima facie evidence of their validity, of the registrant's ownership, and of the exclusive right to use the Registered Marks in commerce, which exclusive right Fusion holds. Fusion has standing to assert this claim as to each of the Registered Marks: Fusion is the registrant and owner of FUSION ORTHOPEDICS and LAPILOCK, and, as to METALOGIX and REVOLUTION EXTERNAL PLATING SYSTEM, Fusion is the exclusive licensee holding, under the NSD License, the exclusive right to use those marks and to sue for their infringement in its own name. In addition and

in the alternative, Fusion has standing under 15 U.S.C. § 1125(a) as to all of the Fusion Marks, as alleged in the Tenth Claim for Relief.

99. Defendants used the Registered Marks in commerce, without Fusion's authorization, in connection with the sale, offering for sale, and distribution of goods, including by continuing after termination to sell, deploy, and bill for products bearing the Registered Marks and by representing to hospitals, surgery centers, and surgeons that they remained authorized distributors and agents of Fusion. This use occurred after Fusion formally revoked Defendants' authorization effective July 31, 2026, and without Fusion's consent.

100. The products Defendants sold and deployed after termination are not genuine Fusion goods. They were placed into commerce outside Fusion's authorized distribution channel and without Fusion's quality controls, mandatory product training, authorization, and post-sale support — the very controls that ensure Fusion's implantable devices are handled and deployed safely. Goods sold outside those controls are materially different from the goods Fusion authorizes to bear the Registered Marks, and Defendants may not invoke the first-sale doctrine to shield their unauthorized use.

101. Defendants' unauthorized use of the Registered Marks is likely to cause confusion, to cause mistake, or to deceive hospitals, surgery centers, surgeons, and the public as to the source, sponsorship, affiliation, or approval of the goods Defendants sell, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Defendants' infringement was knowing, willful, and deliberate, undertaken with full knowledge that their authorization had been revoked.

102. As a direct and proximate result, Fusion has suffered and will continue to suffer irreparable harm and monetary damages. Fusion is entitled to injunctive relief under 15 U.S.C. § 1116; to recover Defendants' profits, Fusion's damages, and the costs of this action; to enhanced or treble damages and reasonable attorneys' fees as an exceptional case under 15 U.S.C. § 1117; and to the delivery up and destruction of infringing materials under 15 U.S.C. § 1118.

## NINTH CLAIM FOR RELIEF — COMMON LAW TRADEMARK INFRINGEMENT

**(Against All Defendants)**

103. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

104. Fusion owns valid and protectable common-law trademark rights in the Common Law Marks identified above. Through Fusion's continuous and substantial use of the Common Law Marks in interstate commerce in connection with its orthopedic medical devices, the Common Law Marks identify Fusion as the source of those goods and have acquired distinctiveness and secondary meaning among surgeons, hospitals, surgery centers, and the purchasing public. Fusion's use of the Common Law Marks in commerce predates any use by Defendants, and Fusion holds priority of use in and ownership of the Common Law Marks.

105. Defendants used the Common Law Marks in commerce, without Fusion's authorization, in connection with the sale, offering for sale, and distribution of goods, including by continuing after termination to sell and deploy products bearing the Common Law Marks and by holding themselves out as authorized distributors and agents of Fusion. As with the Registered Marks, the products Defendants sold and deployed after termination were placed into commerce outside Fusion's authorized distribution channel and without Fusion's quality controls, mandatory training, authorization, and post-sale support, and are therefore not genuine Fusion goods; Defendants may not invoke the first-sale doctrine to shield their unauthorized use.

106. Defendants' unauthorized use of the Common Law Marks is likely to cause confusion, to cause mistake, or to deceive Fusion's customers, surgeons, and the public as to the source, sponsorship, affiliation, or approval of the goods Defendants sell, and constitutes infringement of Fusion's common-law trademark rights. Defendants' infringement was knowing, willful, and deliberate, undertaken with full knowledge that their authorization had been revoked.

107. As a direct and proximate result, Fusion has suffered and will continue to suffer irreparable harm and monetary damages. Fusion is entitled to injunctive relief restraining further use of the Common Law Marks, to compensatory damages, to disgorgement of Defendants' profits, and, given the willful and malicious character of Defendants' conduct, to punitive damages.

**TENTH CLAIM FOR RELIEF — FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN (LANHAM ACT § 43(a))**

**(Against All Defendants)**

108. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

109. In connection with goods and commercial activities, Defendants used in commerce words, terms, names, symbols, and false designations of origin, and false or misleading representations of fact — including the Fusion Marks and Defendants' representations that they remained authorized Fusion distributors and agents — that are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Fusion, and as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by Fusion.

110. Defendants are terminated distributors and sales representatives who, after Fusion revoked their authorization, continued to hold themselves out to Fusion's customers as authorized representatives of Fusion and to sell and deploy goods bearing the Fusion Marks. Such conduct by a terminated distributor is likely to deceive Fusion's customers and the public into believing that Defendants' continued activities are affiliated with, sponsored by, or approved by Fusion when they are not, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Fusion's rights under Section 43(a) extend to both the Registered Marks and the Common Law Marks, each of which is entitled to protection against false association and false designation of origin. Fusion has a commercial interest in its reputation and sales that has been and continues to be injured by this conduct. Defendants have further competed unfairly by selling in the United States

GMreis products that, upon information and belief, they illegally imported and smuggled in circumvention of Fusion's authorized supply channel, under circumstances likely to cause confusion as to the source, sponsorship, or approval of those goods.

111. Defendants' conduct was knowing, willful, and deliberate. As a direct and proximate result, Fusion has suffered and will continue to suffer irreparable harm and monetary damages, and Fusion is entitled to injunctive relief, Defendants' profits, damages, treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## ELEVENTH CLAIM FOR RELIEF — COMMON LAW UNFAIR COMPETITION

### (Against All Defendants)

112. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

113. Arizona common law recognizes a cause of action for unfair competition, which encompasses passing off, palming off, and other deceptive or wrongful business conduct by which a defendant trades upon the name, reputation, and goodwill of another. Fusion has developed valuable goodwill and reputation in its name, its marks (including the Registered Marks and the Common Law Marks), and its products.

114. Defendants engaged in unfair competition by continuing, after termination, to hold themselves out as authorized Fusion distributors and agents, to sell and deploy goods bearing Fusion's name outside Fusion's authorization and quality controls, by illegally importing and smuggling GMreis products into the United States for sale in competition with Fusion, and to trade upon Fusion's name, reputation, and goodwill in order to divert Fusion's customers and business to themselves. This conduct was likely to deceive Fusion's customers, surgeons, and the public and was undertaken in bad faith. As a direct and proximate result, Fusion has suffered damages and irreparable harm and is entitled to compensatory damages, injunctive relief, and, given the willful and malicious character of the conduct, punitive damages.

**SIXTEENTH CLAIM FOR RELIEF**

**AIDING AND ABETTING (Against Rep Defendants)**

115. Fusion incorporates by reference all preceding allegations as though fully set forth herein.

116. The primary tortfeasors, Golden and Ortho Max, engaged in conversion, defamation, tortious interference, fraud, misappropriation of trade secrets, common-law trademark infringement, and common-law unfair competition as set forth above — all tortious conduct giving rise to liability to Fusion. Each Rep Defendant had actual knowledge that this conduct was unauthorized and unlawful: each received Fusion's individual written notice, dated August 10, 2026 and transmitted by email on or about August 20, 2026, which stated in express terms that Ortho Max's authorization had been revoked effective July 31, 2026, that all case coverage, inventory retention, and customer contact in the name of Fusion or Ortho Max was prohibited, and that continued participation would expose each Rep Defendant to individual civil liability. Despite this written, individualized notice, each Rep Defendant continued to participate.

117. Each Rep Defendant provided substantial assistance and encouragement to the primary tortfeasors by: continuing to support surgical cases at Fusion's customer facilities using Fusion's instruments and implants without authorization, thereby directly facilitating Ortho Max's unauthorized post-termination revenue generation and the continued conversion of Fusion's property; retaining Fusion's inventory, instruments, and trays beyond the return deadline, making Fusion's property unavailable for legitimate use; representing to hospitals, surgery centers, and surgeons that they and Ortho Max remained authorized Fusion representatives, directly facilitating the fraud, tortious interference, trademark infringement, and unfair competition described above; and failing to provide Fusion with the accounting of facility-placed inventory expressly demanded in Fusion's notices, thereby assisting in the concealment of converted property and making recovery more difficult. This assistance made it substantially easier for Golden and Ortho Max to continue the unauthorized conduct and prolonged the harm to Fusion. Each Rep Defendant

is individually and jointly and severally liable, pursuant to Restatement (Second) of Torts § 876(b) as adopted in Arizona, for the full extent of the harm caused by the tortious conduct they aided and abetted, and Fusion is entitled to punitive damages reflecting the knowing and deliberate nature of each Rep Defendant's participation.

**DEMAND FOR JURY TRIAL**

Plaintiff Fusion Orthopedics USA, LLC hereby demands a trial by jury on all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Fusion Orthopedics USA, LLC respectfully requests judgment against Defendants, jointly and severally where applicable, as follows:

A. Preliminary and permanent injunctive relief ordering: (i) immediate return of all Fusion inventory, instruments, trays, implants, marketing materials, and other Fusion property; (ii) enjoining Defendants from billing any Fusion customer for any Fusion Product; (iii) enjoining Defendants from representing to any third party that they are authorized Fusion representatives; (iv) enjoining Defendants from using or disclosing any Fusion trade secret or confidential information; and (v) enjoining Defendants from contacting Fusion's suppliers, customers, or prospective distributors for any purpose adverse to Fusion;

B. Compensatory damages in an amount to be proven at trial, including the fair market value of all converted property, all revenues wrongfully collected from Fusion's customers, lost profits from lost customer and supplier relationships, and all other economic losses;

C. Disgorgement of all revenues and profits obtained through the unauthorized sale and billing of Fusion Products after termination;

D. Punitive damages for Defendants' willful, malicious, and wanton conduct;

E. A declaratory judgment that: (i) Fusion is the exclusive owner of all intellectual property associated with the Products; (ii) the Distributor Agreement was

validly terminated for cause as of July 31, 2026; and (iii) Defendants have no right, title, or interest in any Fusion intellectual property, product line, or supplier relationship;

F. An accounting of all Fusion Products sold, all funds collected from Fusion's customers, and all Fusion inventory currently in Defendants' possession or control;

G. Exemplary damages and attorneys' fees pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3); as to Fusion's Lanham Act claims, Defendants' profits, treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, and the delivery up and destruction of infringing materials pursuant to 15 U.S.C. § 1118; and as to Fusion's civil RICO claims, threefold the damages Fusion sustains, together with the costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) and A.R.S. § 13-2314.04(A);

H. Pre- and post-judgment interest at the maximum legal rate;

I. Costs of suit; and

J. Such other and further relief as the Court deems just and proper.

DATED: 23rd day of October 2026

MAHAFFY LAW FIRM, PC

By /S/ Steven C. Mahaffy

Steven C. Mahaffy (Bar No. 022934)
MAHAFFY LAW FIRM PC
PO Box 2902
Gilbert, AZ 85299–2902
Tel.: 480-993-8053
Email: steve@mahaffylaw.com
Attorneys for Plaintiff
Fusion Orthopedics USA, LLC

And

Donald Wilson, Jr.
Brian Holohan
BROENING, OBERG, WOODS & WILSON, P.C.
2800 N. Central Avenue, Suite 1600
Phoenix, Arizona 85004

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By /S/ Steven C. Mahaffy